UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ALEXANDRIA PASTOR,

                    Plaintiff,                          Index No.: _____

     -against-

MERCY MEDICAL CENTER, INC.

                    Defendant.                       **COMPLAINT**

---------------------------------------------------------------X

Plaintiff Alexandria Pastor files this action for damages against Mercy Medical Center, Inc. to seek redress for MMC's unlawful discrimination and retaliation on the basis of their religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")  and in support thereof, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

"Violate your sincerely held religious beliefs or you lose your job." There is perhaps no greater textbook example of the conduct expressly prohibited by Title VII–but such is expressly the case here. After dutifully fulfilling all obligations of her employment for more than six (6) years, Mercy Medical Center, Inc. ("MMC" or "Defendant") terminated Ms. Pastor's employment because of her sincerely held religious beliefs.

For 35 consecutive weeks—the deadliest weeks of the COVID-19 pandemic—MMC permitted its employees to forego vaccination despite its availability since December 2020. Then in August 2021, MMC abruptly took an about-face and immediately began requiring strict compliance with its newly adopted mandatory COVID-19 vaccination policy (the "policy"). In promulgating this policy, MMC informed its employees that religious accommodations were

available for those who sincerely hold religious beliefs that prohibit their compliance with the policy. Despite requesting *and receiving* a religious accommodation, MMC terminated Ms. Pastor in direct violation of her religious rights, the accommodation request MMC granted her, and the numerous assurances against being spontaneously terminated without due process. In addition to the aforesaid religious discrimination gives rise to this action alone, Ms. Pastor's decision to terminate her employment in violation of Title VII.

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 2000e, *et seq.* and therefore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and MMC maintains conducts substantial business in this district.

3.      This Court is authorized to grant Ms. Pastor's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

4.      Plaintiff Alexandria ("Ms. Pastor") is an adult resident of St. Lucie County, Florida and a former MMC employee. At all times relevant, Ms. Pastor was employed as a Speech Pathologist at MMC until she was discriminated against on the basis of her religion, culminating in her termination on or about December 6, 2021.

5.      Defendant Mercy Medical Center, Inc. is a New York corporation that conducts substantial business and maintains a physical office in Rockville Centre, New York and Ms. Pastor's former employer. At all times relevant, MMC employed more than fifteen (15) employees

and is therefore subject to Title VII, which requires employers (such as MMC) to reasonably accommodate its employees' (such as Ms. Pastor) sincerely held religious beliefs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.     On February 18, 2022, Ms. Pastor timely filed a charge of discrimination with the EEOC alleging discrimination on the basis of her religion.

7.     On September 25, 2022, the EEOC issued Ms. Pastor her right-to-sue letter, which *inter alia* provided that Ms. Pastor had 90 days to commence a civil action in federal court.

8.     Because Ms. Pastor filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 1.

## STATEMENT OF FACTS

9.     On or about August 17, 2021, MMC notified its staff that all employees, including Ms. Pastor, were now required to become vaccinated against COVID-19 pursuant to its newly promulgated mandatory COVID-19 vaccination policy. This mandatory requirement was implemented and enforced as a condition of continued employment.

10.     The deadline to become vaccinated was September 27, 2021.

11.     On or about August 17, 2021, MMC sent an email to its employees advising that it would make religious accommodations available—which of course is required by federal law. However, despite claiming it would make religious accommodations available to those whose sincerely held religious beliefs prohibited compliance with MMC's vaccine mandate, this promise was nothing more than illusory, as explained more fully below.

12.     On or about August 30, 2021, Ms. Pastor submitted a religious accommodation request to MMC in the same manner she had done annually throughout her 6-year career with MMC. The only difference between her multiple requests for religious accommodations and this

request is that her prior religious accommodation requests were submitted concerning MMC's mandatory flu vaccination policy, whereas here, she submitted a religious accommodation request concerning MMC's mandatory COVID-19 vaccination policy.

13.     In each of the six years Ms. Pastor worked at MMC, she had submitted a request to be accommodated in regard to MMC's mandatory flu vaccination policy, and each religious accommodation request Ms. Pastor submitted throughout her tenure with MMC was granted without issue.

14.     Specifically, Ms. Pastor is a religious woman who sincerely believes that, as a human created by God, her body was not born with a deficiency that requires vaccination. Under this sincere belief, injecting a vaccine into her body would constitute a sin because Ms. Pastor sincerely believes that knowingly injecting into her body a foreign, unknown, and unnecessary substance that is intended to alter her body from the condition in which her Creator designed it is a sin that, if committed, impacts Ms. Pastor's ability to one day, live in Heaven with God.

15.     There is no dispute that Ms. Pastor's sincerely held religious beliefs are religious in nature, as evidenced by MMC's approval of religious accommodation requests to vaccine mandates in previous years.

16.     There is no dispute that Ms. Pastor's sincerely held religious beliefs are in fact, sincerely held, as evidenced by MMC's approval of religious accommodation requests to vaccine mandates in previous years.

17.     On or about September 2, 2021, MMC advised Ms. Pastor that MMC was not only denying her request; MMC was not even going to *consider* it. MMC further advised that, as of September 27, 2022, Ms. Pastor would be terminated if she had not become vaccinated against COVID-19.

18.     On or about September 23, 2021, Ms. Pastor emailed MMC to inquire as to whether she was to report for work on September 27, 2021, or if she would be automatically terminated. MMC advised Ms. Pastor that she was to come into work and she would merely "be subject to PCR COVID testing which will be provide [*sic*] onsite at Mercy."

19.     Later that afternoon, MMC's Human Resources ("HR") Director, Tony Pellicano, sent a follow-up email advising that Ms. Pastor could continue working and she need only ensure her religious accommodation request was received on or before September 24, 2021—a requirement fully satisfied on August 30, 2021, as mentioned above.

20.     From September 23, 2021 through October 21, 2021, Ms. Pastor worked as scheduled without issue and she complied with all COVID-19 mitigation protocols, including testing, masking, and socially distancing at all times relevant.

21.     On October 21, 2021, Ms. Pastor's department director, Kerry Brown, confirmed that Ms. Pastor's religious accommodation request had been approved and further stated that beginning the following week, MCC would begin testing on a bi-weekly basis and each employee who had received a religious accommodation would be assigned a specific day and time to test. Ms. Brown advised that Ms. Pastor was scheduled for bi-weekly testing every other Wednesday at 11:15 a.m.

22.     On or about November 4, 2021, MMC advised Ms. Pastor received a mailed letter that MMC would be awaiting direction from the United States Supreme Court prior to firing any of its employees, including Ms. Pastor. But this was patently false, as Ms. Pastor learned just two weeks later.

23.     On or about November 17, 2021, Ms. Brown—the same individual who confirmed Ms. Pastor had received a bi-weekly testing accommodation in lieu of mandatory vaccination—

advised Ms. Pastor that upon expiration of her unpaid leave, which began on November 22, 2021 and ran through December 6, 2022, Ms. Pastor would be immediately terminated.

24.     Then, on November 29, 2021, Ms. Pastor learned her career with MMC was going to end on December 6, 2021. Despite the multiple confirmations that she had received a religious accommodation and the multiple assurances that she would not be terminated, MMC nevertheless advised Ms. Pastor that she had just one week to get vaccinated or she would be fired.

25.     On or about December 8, 2021, Ms. Pastor received a letter dated December 6, 2021, terminating her employment—a direct and blatant violation of Title VII's protections against religious discrimination in the workplace.

26.     Ms. Pastor attempted to internally appeal her termination, but she was unsuccessful. MMC refused to allow her to appeal, leaving no other option than to file a charge of discrimination with the EEOC. Unfortunately, the EEOC was unable to reach a resolution and thus, this action is the only means by which Ms. Pastor can seek redress from the wrongful and illegal discriminatory conduct complained of herein.

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**Violation of Title VII**
**42 U.S.C. §§ 2000e, *et seq.***

27.     Ms. Pastor re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

28.     Ms. Pastor sincerely holds religious beliefs and is a member of a protected class based on her religion.

29.     Ms. Pastor is an employee within the meaning of Title VII.

30.     MMC is an employer within the meaning of Title VII.

31.     Title VII forbids an employer from refusing a job to someone because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

32.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

33.     A plaintiff can therefore make out a *prima facie* case under Title VII by showing (1) she held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

34.     More specifically, courts and the EEOC have insisted that federal law can require employers to accommodate sincere religious objections to a loyalty oath—even when that oath might otherwise be required by state law. *See* EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA) 1884 (1985) (concluding that an employer's refusal to accommodate an employee's request to sign an alternate oath for religious reasons violated Title VII).

35.     Here, Ms. Pastor advised MMC of her sincerely held religious beliefs and demonstrated her sincerely held religious beliefs throughout the entirety of her six (6) year employment with MMC.

36.     At all times relevant, MMC knew of Ms. Pastor's sincerely held religious beliefs that prohibited her from receiving vaccines, including the COVID-19 vaccine, as evidenced by the six-year-long history of accommodating Ms. Pastor against mandatory vaccination policies and in light of the multiple correspondences advising Ms. Pastor that MMC granted her accommodation request to its mandatory COVID-19 vaccination policy. MMC went so far as to confirm in writing the day and time Ms. Pastor would be required to fulfill her obligations under the reasonable , bi-weekly testing accommodation that MMC had granted to her.

37.     At all times relevant, Ms. Pastor satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Pastor demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that MMC permitted Ms. Pastor to work in the exact same capacity for months, including months during the height of the pandemic, and never once mandated that she be vaccinated against COVID-19.

38.     At all times relevant, Ms. Pastor complied with all COVID-19 mitigation protocols MMC implemented, including *inter alia* wearing masks, socially distancing, and testing for COVID-19 on a weekly or bi-weekly basis, whichever MMC requested or compelled at the time.

39.     The mitigation protocols, both individually and collectively, have evidenced-based track records demonstrating their effectiveness and the feasibility with which MMC is able to implement and provide any or all of the mitigation protocols.

40.     Based upon MMC' provision of religious accommodations against mandatory vaccination policies for six (6) years, MMC demonstrated its ability to accommodate Ms. Pastor

repeatedly and consistently throughout her employment, and that in doing so, MMC did not endure any undue hardship.

41.     Further, based upon the implementation of the aforesaid mitigation protocols and MMC's decision to continue making such mitigation protocols available for at least 8 months, it is not subject to reasonable dispute that the aforesaid mitigation protocols do not impose upon MMC an undue hardship.

42.     Ms. Pastor has always been amenable, and Ms. Pastor remains amenable, to abiding by the aforesaid mitigation protocols, and MMC was aware of her amenability to the same at all times relevant.

43.     The reasonable religious accommodation Ms. Pastor sought—masking, social distancing, and weekly or bi-weekly COVID-19 testing—would not impose an undue hardship upon MMC and does not impose an undue hardship upon MMC.

44.     Ms. Pastor sincerely holds religious beliefs, as explained fully above.

45.     There is no dispute that MMC and Ms. Pastor agree that the religious beliefs she asserted in seeking a religious accommodation request to its mandatory vaccination policies are beliefs that are, in fact, religious.

46.     Based upon MMC's repeated religious accommodation request approvals and the provision of reasonable accommodations in light of Ms. Pastor's sincerely held religious beliefs throughout her six-year career at MMC, it is not subject to reasonable dispute that MMC and Ms. Pastor are in agreement that her sincerely held religious beliefs are, in fact, are sincerely held.

47.     MMC has never challenged the sincerity with which Ms. Pastor holds their beliefs.

48.    At all times relevant, Ms. Pastor sincerely held the aforesaid religious beliefs prohibiting her compliance with MMC's mandatory vaccination policies, including its mandatory COVID-19 vaccination policy.

49.    At all times relevant, Ms. Pastor never wavered in her beliefs.

50.    At all times relevant, Ms. Pastor never wavered in the sincerity with which she held and believed her religious beliefs.

51.    At all times relevant, Ms. Pastor never wavered in sincerely believing that, if she were to knowingly receive a COVID-19 vaccination, the act of doing so would constitute a sin, and committing such a sin would impact her ability to ultimately reside with God in Heaven.

52.    MMC timely received Ms. Pastor's religious accommodation request to its COVID-19 vaccination policy.

53.    MMC granted Ms. Pastor a religious accommodation request to its COVID-19 vaccination policy.

54.    Despite granting Ms. Pastor a religious accommodation request to its COVID-19 vaccination policy, MMC revoked her request and terminated Ms. Pastor's employment.

55.    There is no legal basis, justification, or cause in terminating Ms. Pastor's employment because she is a religious person.

56.    Because of Ms. Pastor's sincerely held religious beliefs, MMC discriminated against her and terminated her employment.

57.    MMC's decision to discriminate against Ms. Pastor and terminated her employment constitutes religious-based discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

58.     By revoking the reasonable religious accommodation MMC provided to Ms. Pastor concerning MMC's mandatory COVID-19 vaccination policy, MMC effectively failed to accommodate Ms. Pastor from the moment she had her accommodation revoked.

59.     As evidenced by the provision of the reasonable accommodation for weeks, MMC demonstrated the provision of such reasonable accommodation did not impose upon MMC an undue hardship.

60.     MMC's refusal to provide Ms. Pastor a religious accommodation to its mandatory COVID-19 vaccination policy despite Ms. Pastor's lawful entitlement to such an accommodation violates Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

61.     As a religious person, Ms. Pastor is a member of a constitutionally protected class (religion), and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

62.     Alternatively, to the extent MMC asserts it did not grant Ms. Pastor a religious accommodation to its mandatory COVID-19 vaccination policy, MMC ignored and otherwise failed to review or consider Ms. Pastor's request for a religious accommodation while MMC did *not* ignore but instead, actually reviewed other MMC employees' requests for religious accommodations constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

63.     Alternatively, to the extent MMC asserts it did not grant Ms. Pastor a religious accommodation to its mandatory COVID-19 vaccination policy, MMC's failure to review and consider Ms. Pastor's timely-submitted religious accommodation request and decision to nevertheless, terminate her employment, are acts or omission that, taken together or individually, constitute a failure to accommodate in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

64.     In response to Ms. Pastor's request for an accommodation, MMC took an adverse action against her by terminating her employment because of her religious need for an accommodation. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "fail[ing] or refus[ing] to hire," "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

65.     Alternatively, to the extent MMC asserts it did not grant Ms. Pastor a religious accommodation request to its mandatory COVID-19 vaccination policy, MMC thus concedes that it refused to accommodate Ms. Pastor's sincerely held religious beliefs prohibiting her compliance with MMC's mandatory COVID-19 vaccination policy.

66.     MMC's refusal to accommodate Ms. Pastor's sincerely held religious beliefs conflicted with her continued employment and, because of Ms. Pastor's sincerely held religious beliefs, MMC terminated her employment.

67.     Accommodating Ms. Pastor would not have imposed an undue hardship on MMC, as evidenced by the utilization of the COVID-19 mitigation protocols as discussed above.

68.     Other medical facilities and health systems have not insisted on mandatory vaccination without allowing accommodations for objectors.

69.     As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Ms. Pastor sustained pecuniary and non-economic injuries in an amount that exceeds $500,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, and the humiliation, embarrassment, unnecessary pain and suffering Ms. Pastor endured, as well as the attorneys' fees and costs associated with this action Ms. Pastor incurred.

**COUNT II**
**RELIGIOUS DISCRIMINATION**
**Violation of the New York State Human Rights Law**
**N.Y. Exec. Law §§ 290, *et seq.***

70.     Ms. Pastor re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     The New York State Human Rights Law prohibits employers from discriminating on the basis of *inter alia* religion. N.Y. Exec. Law §§290, *et seq*.

72.     MMC had actual knowledge of Ms. Pastor's sincerely held religious beliefs based on the correspondences exchanged concerning her religious accommodation to its mandatory COVID-19 vaccination policy, including communications confirming MMC granted her accommodation request as well as communications concerning specifics about the very accommodation MMC provided in regard to its mandatory COVID-19 vaccination policy.

73.     Ms. Pastor experienced adverse employment action and a materially adverse change in the terms and conditions of her employment – namely, the termination of her employment – because of her sincerely held religious beliefs.

74.     At all times relevant, Ms. Pastor was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated.

75.     At all times relevant, Ms. Pastor was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation.

76.     Because of Ms. Pastor's sincerely held religious beliefs, MMC took adverse employment action against her by *inter alia* refusing to accommodate her and terminating her employment.

77.     Providing a reasonable religious accommodation to Ms. Pastor would not cause MMC to suffer an undue hardship as evidenced by MMC' previous provision of mitigation protocols in lieu of vaccination and the efficacy of such mitigation protocols to achieve the ends sought to be achieved by MMC' mandatory vaccination policy.

78.     All allegations set forth herein constitute a discrimination on the basis of religion.

79.     All allegations set forth herein constitute a failure to accommodate on the basis of religion.

80.     All allegations set forth herein constitute a violation of the NYSHRL's prohibition of religious discrimination.

81.     As a direct and proximate result of the aforesaid complained of conduct and violation of the NYSHRL, Ms. Pastor sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

82.     As a direct and proximate result of the aforesaid complained of conduct and violation of the NYSHRL, Ms. Pastor sustained pecuniary and non-economic injuries in an amount that exceeds $500,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, as well as the humiliation, embarrassment, and unnecessary pain and suffering Ms. Pastor endured, and the attorneys' fees and costs associated with this action Ms. Pastor incurred.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Pastor respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Ms. Pastor whole and remedy the aforesaid violations of New York and federal law, and hold Mercy Medical Center, Inc. liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

(a) Declaring the acts, omissions, and/or practices complained of in herein are unlawful and violate Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law;

(b) Enjoining MMC from implementing, pursuing, enforcing, or promulgating any policy that prohibits any MMC employee from obtaining lawfully entitled religious accommodations based upon sincerely held religious beliefs;

(c) Requiring MMC to adopt hiring and employment policies that comply with the requirements of Title VII and NYSHRL, including the requirement that employers make reasonable accommodations for sincerely religious beliefs and practices in general and faith-based objections to loyalty oaths in particular and any other appropriate and legally permissible injunctive relief in accordance with proof;

(d) Award Ms. Pastor all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial but in an amount no less than $500,000.00, which is to make her whole for the loss she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Ms. Pastor punitive damages based on MMC's spiteful, malicious and/or otherwise evil motivation in committing the acts and/or omissions complained of herein and MMC's conscious, deliberate disregard of Ms. Pastor's fundamental and constitutionally protected religious interests as such acts and/or omissions rise to the level of willful or wanton misconduct;

(f) Award Ms. Pastor any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(g) Award Ms. Pastor a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Ms. Pastor all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

### DEMAND FOR JURY TRIAL

Ms. Pastor hereby demands a trial by jury of all issues and each and every cause of action so triable.


Dated: December 22, 2022

Respectfully submitted,

By:     /s/ CHAD J. LAVEGLIA
Chad J. LaVeglia
LAW OFFICE OF CHAD J. LAVEGLIA, PLLC
350 Motor Parkway, Suite 308
Hauppauge, NY 11788
Tel: (631) 450-2468
claveglia@cjlaw.org

By:     /s/ MICHAEL A. YODER
Michael A. Yoder*
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 2201
Tel: (571) 234-5594
michael@yoderesq.com
*pro hac vice forthcoming

*Counsel for Plaintiff*