UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALEXANDRIA PASTOR,

                Plaintiff,

-against-

MERCY MEDICAL CENTER,

                Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
22-CV-07847 (JMA) (AYS)

FILED
CLERK
2:03 pm, Jun 17, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Plaintiff Alexandria Pastor brought this religious discrimination action asserting Defendant Mercy Medical Center ("MMC") improperly rescinded Plaintiff's religious accommodation to MMC's requirement that employees receive the COVID-19 vaccine, and then MMC terminated Plaintiff's employment. (See generally, Compl., ECF No. 1.) Presently before the Court is MMC's motion to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 13.) As set forth below, the motion is GRANTED.

## I.  BACKGROUND

**A.  Facts**

The facts set forth herein are taken from Plaintiff's Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice. See, e.g., Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).

### 1.  Plaintiff's MMC Employment Before New York's COVID-19 Vaccine Rule

In 2015, Plaintiff began her employment for MMC as a speech pathologist. (See Compl., ECF No. 1 ¶¶ 4, 12-13.) In each year through 2021, Plaintiff requested and obtained from MMC an unspecified religious "accommodation" from MMC's mandatory flu vaccine policy. (Id. ¶ 13.) Prior to August 2021, MMC did not require employees to receive the COVID-19 vaccine. (Id. at 1.)

### 2. New York Implements the COVID-19 Vaccine Rule

The weeks leading up to and in August 2021 were "the deadliest weeks of the COVID-19 pandemic." (Id.)  In August 2021, the COVID-19 pandemic was "surging in New York, with daily positive cases up over 1000% over the course of six weeks." Does v. Hochul, 632 F. Supp. 3d 120, 128 (E.D.N.Y. 2022) (internal citation omitted); see also id. at 127 n.1 ("[T]he Court may take judicial notice of facts regarding COVID-19.").  Later that month, "New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to 'continuously require' certain of their employees to be fully vaccinated against COVID-19." We The Patriots USA, Inc. v. Hochul (We The Patriots I), 17 F.4th 266, 274 (2d Cir.) (per curiam) (citing 10 N.Y.C.R.R. § 2.61), clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022).  That rule ("Section 2.61") applied to "those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.'"[1] Id. (quoting 10 N.Y.C.R.R. § 2.61(a)(2)). It took effect on September 17, 2021, for "general hospitals" and nursing homes and took effect on October 7, 2021, for all other "covered entities." Id. (internal quotation marks omitted).  Section 2.61 lacked a religious exemption but "d[id] not prohibit employers from providing religious objectors with accommodations." Id. at 275; see Kane v. De Blasio, 19 F.4th 152, 160 n.5 (2d Cir. 2021) (explaining that exemptions differ from accommodations because the former allows people to be entirely "not subject to" a given rule).

---

[1] Section 2.61 was repealed effective October 4, 2023.  See Vol. XLV, Issue 40 N.Y. Reg. 22 (Oct. 4, 2023). "The fact that the State Mandate was repealed in October 2023 does not change [the] analysis in the present case . . . ." D'Cunha v. Northwell Health Sys., No. 23-476-CV, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023).

### 3. Plaintiff's Employment After New York Adopted the COVID-19 Vaccine Rule

In late August 2021, consistent with Section 2.61, "MMC notified its staff that all employees, including [Plaintiff], were now required to become vaccinated against COVID-19 pursuant to its newly promulgated mandatory COVID-19 vaccination policy. This mandatory requirement was implemented and enforced as a condition of continued employment." (Compl., ECF No. 1 ¶ 9.) Likewise consistent with Section 2.61, MMC required its employees to be vaccinated by September 17, 2021. (Id. ¶ 10.) MMC informed employees that it would consider religious accommodations to that policy. (See id. ¶ 11.)

Shortly thereafter, Plaintiff requested a "religious accommodation" allowing her to undergo "masking, social distancing, and weekly or bi-weekly COVID-19 testing" in lieu of taking the COVID-19 vaccine. (Id. ¶¶ 12, 43.) Plaintiff explained that certain sincerely held religious beliefs led her to conclude that taking the vaccine would "impact [her] ability to" in the future "live in Heaven with God." (Id. ¶ 14; see also id. ¶¶ 13, 15-16 (asserting this language mirrored Plaintiff's previously approved requests for religious accommodations to MMC's flu vaccine requirement).)

On or about September 2, 2021, MMC informed Plaintiff that it denied her religious accommodation request and would terminate Plaintiff's employment if she were not vaccinated against COVID-19 by September 27, 2021.[2] (See id. ¶ 17.) Two weeks later, a federal district court issued a temporary restraining order enjoining Section 2.61 to the extent it required employers to deny or revoke religious exemptions to that rule. A. v. Hochul, No. 21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021). Plaintiff then emailed MMC and "inquire[d] as to whether . . . she would be automatically terminated" on September 27, 2021, as she was told

---

[2] The Complaint contains an apparent typographical error in alleging MMC warned it would terminate Plaintiff's employment if she were not vaccinated by September 27, 2022. (See Compl., ECF No. 1 ¶ 17.) Given the balance of Plaintiff's allegations, the Court presumes Plaintiff meant to allege MMC warned it would terminate Plaintiff's employment in September 2021.

before the temporary restraining order was issued. (Compl., ECF No. 1 ¶ 18.) An unspecified individual responded that Plaintiff could "come into work" and avoid termination by undergoing on-site COVID-19 testing. (Id.) MMC's Human Resources Director "sent a follow-up email advising that [Plaintiff] could continue working." (Id. ¶ 19.)

Plaintiff continued to work on-site without issue—and "complied with all COVID-19 mitigation protocols, including testing, masking, and socially distancing." (Id. ¶ 20.) In mid-October 2021, the federal district court that temporarily enjoined Section 2.61 issued a similar preliminary injunction prohibiting enforcement of Section 2.61. See A. v. Hochul, 567 F. Supp. 3d 362, 377 (N.D.N.Y. 2021). Later that month, Plaintiff's Department Director advised Plaintiff that MMC approved her religious accommodation request and required Plaintiff to undergo bi-weekly COVID-19 testing. (Compl., ECF No. 1 ¶ 21.)

In early November 2021, the Second Circuit reversed and vacated the district court's preliminary injunction against enforcing Section 2.61. See We The Patriots I, 17 F.4th at 296. Plaintiff's Department Director then informed Plaintiff that MMC would place Plaintiff on unpaid leave and eventually terminate her if she did not take the COVID-19 vaccine. (See Compl., ECF No. 1 ¶ 23.) On November 22, 2021, MMC put Plaintiff on unpaid leave. (See id.) On November 29, 2021, MMC informed Plaintiff that she had "one week to get vaccinated or she would be fired." (Id. ¶ 24.) In December 2021, MMC terminated Plaintiff's employment. (Id. ¶ 25.) Plaintiff unsuccessfully appealed that termination within MMC. (Id. ¶ 26.)

B. **Procedural History**

On February 18, 2022, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") asserting, based on the above-described allegations, that MMC subjected Plaintiff to religious discrimination. (Id. ¶ 6.) On September 25, 2022, the EEOC issued Plaintiff a right-to-sue letter. (Id. ¶ 7.)

On December 23, 2022, Plaintiff commenced this action by filing the Complaint. (See generally, id.) The Complaint asserts that MMC committed religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290 et seq. ("NYHRL"), by rescinding Plaintiff's religious accommodation to MMC's mandatory vaccine policy and later terminating Plaintiff's employment. (Id. ¶¶ 27-82.)

MMC thereafter requested a pre-motion conference pursuant to the undersigned's Individual Rules to obtain leave to file the instant motion. (ECF No. 8.) The Court waived its pre-motion conference requirement, and the parties briefed the motion under their agreed-upon briefing schedule. (See Orders dated June 6, 2023, and Sept. 12, 2023; ECF No. 13.)

II. **LEGAL STANDARD**

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the Complaint and consider documents attached to the Complaint, documents incorporated by reference in or integral to the Complaint, and matters of which the

5

court may take judicial notice. E.g., Clark, 89 F.4th at 93. While the Court accepts Plaintiff's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 664.

## III. DISCUSSION

### A. Plaintiff's Title VII Failure to Accommodate Claim Fails

"Title VII . . . requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" Groff v. DeJoy, 600 U.S. 447, 454 (2023) (quoting 42 U.S.C. §2000e(j)). To maintain a Title VII claim for failure to grant a religious accommodation, Plaintiff must first establish a prima facie case by showing that (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement. Doughty v. Dep't of Developmental Servs. STS, 607 F. App'x 97, 98 (2d Cir. 2015); Knight v. State Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001). "Once a prima facie case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Hale v. Vidal, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (quoting Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006)).

MMC does not assert that Plaintiff failed to plead a prima facie case. (See generally, Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def. Mem."), ECF No. 13-2.) MMC instead asserts that "Plaintiff['s] claims fail because the requested accommodations, if granted, would have imposed an undue hardship on [MMC] by requiring it to (1) violate [Section 2.61], subjecting itself to penalties, and (2) compromise the health and safety of patients and employees." (Id. at 7.) The Court accepts the following premises to that argument because they are undisputed: MMC was subject to Section 2.61 as a covered entity and Plaintiff fell under Section 2.61's definition of "personnel" when she worked on site. See D'Cunha, 2023 WL 7986441, at *3 (taking this approach); Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psych. Ctr., No. 23-CV-04164, 2024 WL 1908533, at *7 (E.D.N.Y. May 1, 2024) (same); see also N.Y. EDUC. LAW § 8201 (defining the practice of speech language pathology). For the reasons explained below, the Court agrees with MMC.

1. **Plaintiff's Requested Working Conditions Would Have Imposed an Undue Hardship**

MMC bears the burden to show that it could not accommodate Plaintiff's religious beliefs without suffering an "undue hardship." Baker, 445 F.3d at 546 (quoting Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002)); Knight, 275 F.3d at 167 (citing Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985), aff'd, 479 U.S. 60 (1986)). The Supreme Court recently clarified that undue hardship is "shown when a burden is substantial in the overall context of an employer's business." Groff, 600 U.S. at 468 (rejecting the "more than de minimis" standard derived from Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977)); see D'Cunha, 2023 WL 7986441, at *2 (acknowledging this change to the standard for evaluating an employer's "undue hardship" with respect to a requested religious accommodation); Cagle v. Weill Cornell Med., 680 F. Supp. 3d 428, 436 n.2 (S.D.N.Y. 2023) (same). That necessitates a "fact-specific inquiry." Groff, 600 U.S.

7

at 468. At this point, the inquiry is limited: "The defense of undue hardship 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) if the defense appears on the face of the complaint.'" D'Cunha, 2023 WL 7986441, at *2 (quoting Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd., 620 F.3d 137, 145 (2d Cir. 2010)) (ellipsis omitted).

Plaintiff's requests that MMC allow her to work on site—i.e., her requests to undergo "masking, social distancing, and weekly or bi-weekly COVID-19 testing" (Compl., ECF No. 1 ¶¶ 12, 43)—would have imposed an undue hardship as a matter of law.[3] MMC could not have granted those requests "without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship." D'Cunha, 2023 WL 7986441, at *3 (first citing Cassano v. Carb, 436 F.3d 74, 75 (2d Cir. 2006); and then citing Lowman v. NVI LLC, 821 F. App'x 29, 32 (2d Cir. 2020)); see, e.g., Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 510 (S.D.N.Y. 2023) (holding the requested "weekly testing accommodation" would impose an undue hardship given that it "would not remove Plaintiff from the scope of Section 2.61 because Plaintiff would have continued working on site"), aff'd, No. 23-1063, 2024 WL 1107481, at *1 (2d Cir. Mar. 14, 2024); Hochul, 632 F. Supp. 3d at 132 n.20, 145 (holding that the requested on-site masking, testing,

---

[3] Plaintiff contends that MMC "misrepresent[s]" these requests as seeking exemptions rather than accommodations. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp."), ECF No. 13-3 at 7-8.) But MMC is correct. As the Second Circuit explained, "Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule." We The Patriots I, 17 F.4th at 292 (emphasis added).

> In other words, it may be possible under the Rule for an employer to accommodate—not exempt— employees with religious objections, by employing them in a manner that removes them from the Rule's definition of "personnel." Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed.

We The Patriots USA, Inc. v. Hochul (We The Patriots II), 17 F.4th 368, 370 (2d Cir. 2021) (emphases removed); see We The Patriots I, 17 F.4th at 292 (similar). Thus, Plaintiff's pursuit of employment terms violative of Section 2.61 constitute requests for exemptions, not accommodations. E.g., Hochul, 632 F. Supp. 3d at 132 n.20; Algarin, 678 F. Supp. 3d at 510; cf. Jackson, 2024 WL 1908533, at *8 (explaining that requests to work from home seek accommodations because they would put employees outside the scope of Section 2.61).

reporting, and monitoring regiment would have imposed an undue hardship by violating Section 2.61); Tandian v. State Univ. of N.Y., __ F. Supp. 3d __, No. 22-CV-1401, 2023 WL 8827577, at *9 (N.D.N.Y. Oct. 13, 2023) (dismissing Title VII claim on undue hardship grounds because plaintiff's requested accommodation would have allowed her to work on-site "unvaccinated, which would violate Section 2.61").

Finally, aside from Section 2.61, "there is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiff[] to remain unvaccinated while working at [MMC's] facilities, and the risk of civil liability to anyone infected by an unvaccinated employee." Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., No. 22-CV-2929, 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (citations omitted); see Hochul, 632 F. Supp. 3d at 145 & n.28; D'Cunha v. Northwell Health Sys., No. 22-CV-0988, 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023), aff'd, No. 23-476-CV, 2023 WL 7986441 (2d Cir. Nov. 17, 2023).

### 2. Plaintiff's Contrary Arguments are Unavailing

Plaintiff advances three arguments against the well-settled conclusion that Title VII claims fail on undue hardship grounds where the requested in-person working conditions would require a covered entity to violate Section 2.61. Those arguments lack merit.

First, Plaintiff contends that "no fines or compliance penalties for failing to adhere to Section 2.61 exist." (Opp., ECF No. 13-2 at 9 (emphasis removed).) That is untrue. A violator of Section 2.61 could suffer "stringent penalties," including loss of its operating license. St. Hillaire v. Montefiore Med. Ctr., No. 23-CV-4763, 2024 WL 167337, at *4 (S.D.N.Y. Jan. 16, 2024) (citing N.Y. PUB. HEALTH LAW § 2806(1)(a)); see D'Cunha, 2023 WL 7986441, at *3; Jackson, 2024 WL 1908533, at *7.

9

Second (and relatedly), Plaintiff contends that granting her requested working conditions did not and could not impose an undue hardship because MMC did not suffer penalties when it allowed Plaintiff to work on site with biweekly testing. (See Opp., ECF No. 13-2 at 9.) This argument fails for several reasons. Principally, the argument contradicts the "long line of cases" that "uniformly rejected" claims that Title VII requires employers to grant religious exemptions "at the cost of violating Section 2.61"—irrespective of whether penalties were imposed against employers. Cagle, 680 F. Supp. 3d at 436 (emphasis added) (collecting cases). Indeed, it is the violation of law and related "potential penalties" that constitute the undue hardship. D'Cunha, 2023 WL 7986441, at *3 (emphasis added). Regardless of MMC's prior authorization of mitigation measures to protect against Plaintiff's lack of COVID-19 vaccination,

> the burden Defendant faced to accommodate Plaintiff's religious belief[s] changed after the State of New York set out new rules on vaccination for employees like Plaintiff. Plaintiff's Complaint acknowledges that the mandate that Plaintiff get vaccinated despite her religious objections came after the State set out new rules. Those new rules altered the burden that Defendant faced from accommodating Plaintiff's religious objections. Being exposed to legal consequences for violating New York regulations represents a serious burden.

Mace v. Crouse Health Hosp., Inc., No. 22-CV-1153, 2023 WL 5049465, at *8 (N.D.N.Y. Aug. 8, 2023). Additionally, Plaintiff's argument ignores that the then-operative injunctions effectively precluded enforcement of Section 2.61 against MMC for nearly all the time Plaintiff worked unvaccinated in contravention of the rule. See supra Section I.A.3. The Second Circuit's revival of Section 2.61's enforceability in We The Patriots I naturally led to the termination of Plaintiff's employment given her refusal to be vaccinated. See supra Section I.A.3. Finally, it would be nonsensical for Title VII to require, as Plaintiff advocates, employers to undertake illegal conduct so long as they are not penalized for it. See Bey v. City of New York, 999 F.3d 157, 170 (2d Cir. 2021) (holding that Title VII does not require employers to "depart from" binding law).

10

Third, Plaintiff argues that Section 2.61 was preempted by Title VII. (See Opp., ECF No. 13-2 at 10-11.) This argument is procedurally and substantively deficient. As a matter of procedure, Plaintiff did not allege in her Complaint a cause of action asserting Section 2.61 was preempted by federal law, so "she cannot assert [the claim] in her responsive memorandum of law now." Tandian, 2023 WL 8827577, at *9 (rejecting preemption challenge to Section 2.61); see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) ("A party is not entitled to amend its complaint through statements made in motion papers." (citation omitted)); Gachette v. Metro N.-High Bridge, 722 F. App'x 17, 21 (2d Cir. 2018) (similar). Even if it were procedurally proper, Plaintiff's preemption argument is meritless. "Section 2.61 does not require employers to violate Title VII because, although it bars an employer from granting a religious exemption from the vaccination requirement, it does not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement."[4] We the Patriots I, 17 F.4th at 292 (emphases removed); see Hochul, 632 F. Supp. 3d at 146-47; Conde v. Mid Hudson Reg'l Hosp. Med. Ctr., No. 22-CV-3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024).

**B.**     **Plaintiff's NYHRL Claim Likewise Fails**

In August 2019, the NYHRL was amended to direct courts to construe the NYHRL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the

---

[4]     Plaintiff's reliance on Med. Pros. for Informed Consent v. Bassett, 185 N.Y.S.3d 578, 585 (Sup. Ct. 2023) for its invalidation of Section 2.61 is misplaced. (See Opp., ECF No. 13-3 at 6.) That decision was issued in 2023, well after the employment activity Plaintiff complains of; is not binding on this Court; and was stayed by the Appellate Division, Fourth Department. See Algarin, 678 F. Supp. 3d at 511-12 (finding Bassett unpersuasive for these reasons); Parks v. Montefiore Med. Ctr., No. 23-CV-4945, 2024 WL 917330, at *4 (S.D.N.Y. Mar. 4, 2024) (same); Dennison, 2023 WL 3467143, at *6 n.8 (same); see also Med. Pros. for Informed Consent v. Bassett, 197 N.Y.S.3d 785, 787 (App. Div. 4th Dep't 2023) (dismissing appeal as moot due to Section 2.61's repeal).

NYHRL], have been so construed."[5]  EXEC. LAW § 300; see Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 552 (S.D.N.Y. 2023).  Even accounting for that more liberal standard, courts routinely dismiss claims under the NYHRL (and parallel Title VII claims) premised on the failure to grant religious accommodations where the requested working conditions would have violated Section 2.61 and thereby imposed an undue hardship.  See Algarin, 678 F. Supp. 3d at 512-13; Addonizio v. Nuvance Health, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024); Conde, 2024 WL 168282, at *7-8.  Accordingly, Plaintiff's NYHRL claim fails for the same reason her Title VII claim fails: the requested working conditions would have necessitated that MMC violate Section 2.61.  See supra Section III.A.

**C.**     **Leave To Amend**

The Court denies leave to amend the Complaint for two reasons.  First, Plaintiff is counseled and has not requested leave to amend the Complaint.  See Felder v. United States Tennis Ass'n, 27 F.4th 834, 848 (2d Cir. 2022); Hu v. City of New York, 927 F.3d 81, 107 (2d Cir. 2019).  Second, amendment would be futile because Plaintiff cannot cure the above-described legal deficiencies.  See Conde, 2024 WL 168282, at *9 (dismissing Title VII and NYHRL religious discrimination claims with prejudice as futile given the undue hardship the employer would face if it granted plaintiff's requested exemption from Section 2.61); Moore v. Montefiore Med. Ctr., No. 22-CV-10242, 2023 WL 7280476, at *8 (S.D.N.Y. Nov. 3, 2023) (same); accord Kane v. Mount Pleasant Cent. Sch. Dist., 80 F.4th 101, 107 (2d Cir. 2023); IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., 783 F.3d 383, 389 (2d Cir. 2015).

---

[5]     Before that amendment to the NYHRL, courts in this circuit "typically treat[ed] Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."  Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019) (internal quotation marks omitted).

## IV. CONCLUSION

For the reasons stated above, MMC's motion to dismiss the Complaint is GRANTED and this action is DISMISSED with prejudice.

**SO ORDERED.**

Dated: June 17, 2024
       Central Islip, New York

                                                        (/s/ JMA)
                                       JOAN M. AZRACK
                                       UNITED STATES DISTRICT JUDGE